No. 26-2028

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellant

v.

GRISELLE LACOSTA-FRANCO,
Appellee

Pennsylvania - Philadelphia
United States District Court for the Eastern District of Pennsylvania
2:26-cr-00027-GAW-001

RESPONSE BRIEF FOR APPELLEE

ABIGAIL E. HORN
Assistant Federal Defender
Chief of Appeals

LISA EVANS LEWIS
Chief Federal Defender

Federal Community Defender Office
for the Eastern District of PA
601 Walnut Street, Suite 540 West
Philadelphia, PA 19106
(215) 928-1100

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ........................................................................................ iv

Statement of Subject Matter and Appellate Jurisdiction ........................................ 1

Statement of the Issue ........................................................................................ 3

Statement of the Case ........................................................................................ 4

A. Introduction ................................................................................................ 4

B. Factual and procedural history ................................................................... 5

1. Police officers happen upon Ms. LaCosta Franco in a stolen pickup truck, with a large quantity of drugs, two cell phones, and no cash. ..................................................................... 6

2. Police officers obtain a search warrant for the cell phones. ..... 6

3. Ms. LaCosta Franco moves to suppress and the government responds. ..................................................................................... 7

4. The district court suppresses the fruits of the cell phone searches. ..................................................................................... 8

5. The government appeals. ...................................................... 10

Summary of Argument ...................................................................................... 11

Argument .......................................................................................................... 13

I. The district court properly granted a motion to suppress the fruits of cell phone searches because the search warrant affidavit lacks a nexus—a bridge between evidence of the crime and the place to be searched. ........................................................................................ 13

Standard of Review ........................................................................................ 13

**TABLE OF CONTENTS - continued**

**PAGE**


Discussion ........................................................................................ 13

A. The Fourth Amendment and the nexus requirement ......................... 14

B. The Fourth Amendment protects cell phone privacy. ....................... 16

C. A cell phone warrant cannot issue for every felony drug arrest. ...... 17

1. Under *Gates*, probable cause turns on the facts of the case, not *per se* rules. ........................................................................ 18

2. *Per se* cell phone searches cannot stand under *Riley*. ............. 18

3. This Court's nexus cases do not allow for a *per se* rule. ........ 21

4. A *per se* rule fails to account for the factual variety in drug cases. ........................................................................... 24

D. The search warrant affidavit fails to establish a nexus in Ms. LaCosta-Franco's case. ............................................................ 26

1. The affidavit alleges transporting drugs, not buying and selling. ........................................................................... 27

2. The government's other arguments fail. ................................. 28

i. There is nothing usual about putting a cell phone in your pocket. ....................................................................... 28

ii. There is nothing unusual about having two cell phones. ..................................................................... 30

E. The good faith exception does not apply. ......................................... 31

1. The good faith exception and its limitations ........................... 31

## TABLE OF CONTENTS - continued

**PAGE**


2. The good faith exception does not apply in Ms. LaCosta-Franco's case. .................................................... 33

3. There is no evidence of prosecutor review and approval. ...... 33

Conclusion ........................................................................................................ 35

Certifications

## TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE(s)**

*Carpenter v. United States*,
585 U.S. 296 (2018) ........ *passim*

*Chatrie v. United States*,
146 S. Ct. 2193 (2026) ........ 9, 10, 17, 35

*Illinois v. Gates*,
462 U.S. 213 (1983) ........ *passim*

*In re Search of Certain Cell Phones*,
541 F. Supp. 2d 1 (D.D.C. 2008) ........ 23

*In re Search of One Device*,
783 F. Supp. 3d 183 (D.D.C. 2025) ........ 20, 23

*Lange v. California*,
594 U.S. 295 (2021) ........ 20

*Messerschmidt v. Millender*,
565 U.S. 535 (2012) ........ 34, 35

*Riley v. California*,
573 U.S. 373 (2014) ........ *passim*

*Steagald v. United States*,
451 U.S. 204 (1981) ........ 16

*United States v. Abdullah*,
127 F.3d 1100 (4th Cir. 1997) ........ 25, 31

*United States v. Banyan*,
791 F. Supp. 3d 388 (S.D.N.Y. 2025) ........ 20

*United States v. Best*,
639 F. App'x 848 (3d Cir. 2016) ........ 30

*United States v. Blasdel*,
153 F.4th 1069 (10th Cir. 2025) ........ 32

*United States v. Brown*,
828 F.3d 375 (6th Cir. 2016) ........ 32

*United States v. Burton*,
288 F.3d 91 (3d Cir. 2002) ........ 28-29

*United States v. Deschambault*,
176 F.4th 9 (1st Cir. 2026) ........ 15

## TABLE OF AUTHORITIES - continued

**PAGE(s)**


*United States v. Eggerson*,
999 F.3d 1121 (8th Cir. 2021) .................................................... 23, 24

*United States v. Griffith*,
867 F.3d 1265 (D.C. Cir. 2017) .................................................... 25

*United States v. Harris*,
No. 25-cr-349, 2026 WL 1945175 (D.D.C. July 6, 2026) ............................... 20

*United States v. Hemani*,
146 S. Ct. 1677 (2026) .................................................... 25

*United States v. Hodge*,
246 F.3d 301 (3d Cir. 2001) .................................................... 22, 23, 28

*United States v. Hoffler*,
No. 22-4101, 2022 WL 17974625 (4th Cir. Dec. 28, 2022) ....................... 25, 30

*United States v. Ivey*,
91 F.4th 915 (8th Cir. 2024) .................................................... 21

*United States v. Jackson*,
No. 23-cr-00026-4, 2024 WL 150224 (E.D. Pa. Jan. 12, 2024) ......................... 7

*United States v. Jones*,
994 F.2d 1051 (3d Cir. 1993) .................................................... 16

*United States v. Katzin*,
769 F.3d 163 (3d Cir. 2014) .................................................... 35

*United States v. Leon*,
468 U.S. 897 (1984) .................................................... 35, 31, 32, 34

*United States v. Lindsey*,
3 F.4th 32 (1st Cir. 2021) .................................................... 23

*United States v. Orozco*,
41 F.4th 403 (4th Cir. 2022) .................................................... 15, 23, 29

*United States v. Silva*,
146 F.4th 183 (2d Cir. 2025) .................................................... 21

*United States v. Stearn*,
597 F.3d 540 (3d Cir. 2010) .................................................... 15, 22, 28

*United States v. Underwood*,
725 F.3d 1076 (9th Cir. 2013) .................................................... 31, 32

*United States v. Whitner*,
219 F.3d 289 (3d Cir. 2000) .................................................... 29

## TABLE OF AUTHORITIES - continued

**PAGE(s)**

*United States v. Williams*,
974 F.3d 320 (3d Cir. 2020) .......... 22, 28

*United States v. Wilson*,
153 F.4th 478 (5th Cir. 2025) .......... 15

*United States v. Zimmerman*,
277 F.3d 426 (3d Cir. 2002) .......... 18, 31, 32

*Virgin Islands. v. John*,
654 F.3d 412 (3d Cir. 2011) .......... 15, 32, 34

*Virgin Islands v. Hodge*,
359 F.3d 312 (3d Cir. 2004) .......... 10

*Warden v. Hayden*,
387 U.S. 294 (1967) .......... 15

*Wong Sun v. United States*,
371 U.S. 471 (1963) .......... 31

*Zurcher v. Stanford Daily*,
436 U.S. 547 (1978) .......... 15

**FEDERAL STATUTES**

18 U.S.C. § 3231 .......... 1

18 U.S.C. § 3731 .......... 1

**SENTENCING GUIDELINES**

U.S.S.G. § 1B1.3 .......... 24

U.S.S.G. § 2D1.1 .......... 25

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The government appeals the district court's order suppressing evidence in a criminal case. The district court has original jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction over the government's interlocutory appeal because "the United States attorney certifie[d] to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. Counsel is aware of no other case or proceeding—completed, pending or about to be presented to this Court or any other court or agency, state or federal—that is in any way related to this appeal.

## STATEMENT OF THE ISSUE

**Whether the district court properly granted a motion to suppress the fruits of cell phone searches because the search warrant affidavit lacks a nexus—a bridge between evidence of the crime and the place to be searched.**

## STATEMENT OF THE CASE

### A. Introduction

The Founders could not have imagined cell phones, but they knew that the law must stand between citizens and the surveillance state. They gave us the Fourth Amendment. That inheritance protects us today, when technology has put so much, and such private information, all in one place.

The basic legal principles are already established. Under the Fourth Amendment, police officers cannot search a cell phone incident to arrest; they must obtain a search warrant. *Riley v. California*, 573 U.S. 373 (2014). A search warrant, in turn, requires probable cause to believe that evidence of the crime will be found in a particular place. In short, there must be a nexus.

This appeal is about what constitutes a nexus for a cell phone. The government seeks a *per se* rule "authorizing law enforcement to search the phones of drug dealers." Gov't Br. at 3. But that is not how probable cause works. Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

Police officers cannot obtain warrants for the cell phone of every suspected drug dealer. This Court has already rejected *per se* rules for drug dealers' homes. It should hold the same for cell phones. "Indeed, a cell phone search would typically

expose to the government far *more* than the most exhaustive search of a house." *Riley*, 573 U.S. at 396.

Here, the district court properly suppressed the fruits of the cell phone search. Police officers happened upon Griselle LaCosta-Franco in a stolen pickup truck, with a large quantity of drugs, paraphernalia, two cell phones, and no cash. There was no nexus to search these cell phones. The affidavit contains no evidence that Ms. LaCosta-Franco used a cell phone for drug activity. Nor can this be inferred. The affidavit does not allege that Ms. LaCosta-Franco was buying and selling drugs. It alleges transporting, which does not require use of a cell phone; such instructions can be given in person.[1]

### B. Factual and procedural history

The facts on appeal are those within the four corners of the search warrant affidavit. This brief accepts them for the purpose of this interlocutory appeal only. Ms. LaCosta-Franco retains the presumption of innocence.

---

[1] The district court's opinion is not directly at issue because review is plenary. Yet the court must be defended from the outset. The government claims it made "fundamental errors" of law, "disregarded" the facts, and issued an "idiosyncratic," "unprecedented," and "inappropriate" opinion. Gov't Br. at 19, 20, 21, 37. This is unwarranted. The opinion is thoughtful and sound. This is all the more commendable because the court worked under time pressure. The government said it could go forward to trial on April 7, regardless of the suppression ruling. Appx127-28. The court took the government at its word: it held argument on March 11, ruled on April 2, and was ready for a trial on April 7. Appx4, 69. The government then appealed.

### 1. Police officers happen upon Ms. LaCosta-Franco in a stolen pickup truck, with a large quantity of drugs, two cell phones, and no cash.

On September 22, 2025 at 10:30 a.m., police officers were surveilling a pickup truck that had been reported stolen. Ms. LaCosta-Franco put something in the back seat, got in the driver's seat, and turned on the engine. She was arrested. Appx53-54.

It turned out that the police had stumbled onto large-scale drug activity. After detaining Ms. LaCosta-Franco—who tried to put things in her pockets, resisted, and slipped out of her handcuffs—police officers recovered the evidence. Ms. LaCosta-Franco had drugs and two cell phones, and she was wearing latex gloves. In the truck was over a kilogram of heroin. The truck also contained paraphernalia (latex gloves, baggies, rubber bands, and scales), other drugs, a pill bottle in another woman's name, and a driver's license in a man's name. There was no cash. Appx54-56.

### 2. Police officers obtain a search warrant for the cell phones.

Police officers obtained a search warrant for Ms. LaCosta-Franco's cell phones. The search warrant affidavit recited the facts of the offense. It also included pages of boilerplate about drug traffickers and cell phones generally. Appx51-52, 56-63. The district court found that this was "stock language used in every warrant application to search a cellphone." Appx24. Tellingly, it refers to

firearms, computers, hard drives, and word processing files—items with no role in this case. Appx56, 49-62. In essence, the boilerplate states that drug traffickers use cell phones in their crimes, for example, to send texts, leave voicemail, save contacts, take pictures, and search the internet.[2]

#### 3. Ms. LaCosta-Franco moves to suppress and the government responds.

Ms. LaCosta-Franco moved to suppress the fruits of the cell phone searches. Among other things, she argued that the search warrant affidavit lacks probable cause. Specifically, it lacks a nexus—a bridge between evidence of the crime and the place to be searched. Appx10; Dkt. 18 at 3, 5, 15.

The government opposed the motion on the four corners of the affidavit. Appx11, 88-89. It argued the facts of the offense: the stolen truck, large quantity of drugs, two cell phones, resistance, purported concealment, and the man's driver's license. Dkt. 22 at 15. It also argued the boilerplate about drug traffickers and cell phones. Dkt. 22 at 16. In the alternative, it asserted the good faith exception to the exclusionary rule. Dkt. 22 at 24.

---

[2] The government does not dispute that the affidavit is full of boilerplate. Nor could it: the same language appears in other affidavits (although only the government knows how often). *See United States v. Jackson*, No. 23-cr-00026-4, 2024 WL 150224, at *21-24 (E.D. Pa. Jan. 12, 2024).

#### 4. The district court suppresses the fruits of the cell phone searches.

The district court granted the motion to suppress. It suppressed the fruits of the cell phone searches (and nothing else).

In its opinion, the district court recognized that cell phones contain vast and private information, such as medical records, personal photos, and financial records. Appx5. The court also recognized that people commonly have two cell phones—one for personal use and one for work. Appx6 & n.1.

The court then turned to the warrant requirement. It paid "great deference" to the magistrate judge, although it also noted that deference does not render the court a "rubber stamp." Appx12 (citation omitted). It defined probable cause. Appx12. And it recognized that probable cause requires a sufficient connection between evidence of the crime and the place to be searched, that is, a nexus. Appx6.

The district court explained that a nexus can be proven by either direct evidence or inference. It stated that "[p]robable cause does not require direct evidence." Appx6. And it stated that "direct evidence linking a place to be searched with a crime is not required for the issuance of a search warrant. 'Instead, probable cause can be, and often is, inferred.'" Appx25 (citation omitted).

The court described the nexus requirement for cell phones. In doing so, it relied on two landmark Supreme Court opinions on cell phone privacy. Appx6, 12,

20 n.11, 26. These opinions, *Riley* and *Carpenter*, hold that cell phones raise "unique" privacy interests under the Fourth Amendment. *Carpenter v. United States*, 585 U.S. 296, 315 (2018); *see also Riley*, 573 U.S. at 393 (holding that cell phones "differ in both a quantitative and a qualitative sense" from other personal property).[3]

The district court rejected a *per se* rule allowing the police to obtain a cell phone warrant for any arrestee. Appx6. It also rejected a *per se* rule for the cell phones of drug dealers. Appx22 n.14. Instead, the court applied a "case-by-case" test. Appx18 n.10. As it stated, an affidavit needs "offense-specific facts—be they direct or indirect—connecting the crimes charged with the specific use of the cellphone and its contents." Appx19.

The court considered all the facts in Ms. LaCosta-Franco's case. It acknowledged the stolen pickup truck, resistance, large quantity of drugs, two cell phones, paraphernalia, the man's driver's license, and the boilerplate about drug traffickers and cell phones. Appx7-10. It determined that the affidavit lacks a nexus. It also rejected the good faith exception—holding that it was unreasonable to rely on this warrant given the missing nexus; plus, no drugs were suppressed so

[3] The Supreme Court later issued a third opinion on cell phone privacy in *Chatrie v. United States*, 146 S. Ct. 2193 (2026).

the "cost to the Government in this instance is low." Appx35.[4]

### 5. The government appeals.

The government appealed and certified that the fruits of the cell phone searches are material under § 3731. Appx1.[5] The fruits are minimal. The cell phone searches led the police to an iCloud account, which contained a backup of the cell phone contacts. At trial, the government wants to introduce (1) the relative number of contacts on the two cell phones and (2) a handful of contacts with drug-related nicknames. Gov't Br. at 17 n.3; SAppx8, 10, 13-14.

---

[4] The district court did not reach Ms. LaCosta-Franco's particularity clause arguments. The particularity clause guarantees that a search "will be of an appropriate scope—that it is 'carefully tailored to its justifications.'" *Chatrie*, 146 S. Ct. at 2215 (citation omitted). Ms. LaCosta-Franco argues that the affidavit (1) alleges a single episode, but allows the police to seize records for a month, and (2) covers essentially everything on a cell phone, including contacts, usernames, passwords, texts, photos, videos, and internet browser history. Dkt. 18 at 19-21; *see also* Appx67-68. The government does not address particularity in its brief. If this Court were to reverse, which it should not, it should remand for the district court to address this in the first instance.

[5] The defense cannot contest the government's § 3731 certification. *See Virgin Islands v. Hodge*, 359 F.3d 312, 325 (3d Cir. 2024).

## SUMMARY OF ARGUMENT

Cell phones contain broad and sensitive information. The privacy interests raised are "unique" under the Fourth Amendment. *Carpenter v. United States*, 585 U.S. 296, 315 (2018). For this reason, police officers cannot search a cell phone incident to arrest; they must obtain a search warrant based on probable cause. *Riley v. California*, 573 U.S. 373 (2014).

When it comes to probable cause for a cell phone search, police officers could conceive of cell phone evidence for virtually any offense, from reckless driving on up. This can be drafted in boilerplate. Then it can be cut and pasted into affidavit after affidavit. If such boilerplate were enough for a search warrant to issue, then *Riley* would not offer real protection; it would just require some extra paperwork.

*Riley* requires more than this. A cell phone warrant cannot issue for every arrest, or even for every felony drug arrest. Instead, a cell phone warrant requires a case-specific nexus—a bridge between evidence of the crime and the place to be searched. A nexus is required when police officers want to search a drug dealer's home. The same must be so for a cell phone, which is "far *more*" exposing. *Riley*, 573 U.S. at 396.

The nexus requirement was not met in Ms. LaCosta-Franco's case. Police officers happened upon Ms. LaCosta-Franco in a stolen pickup truck, with a large

quantity of drugs, paraphernalia, two cell phones, and no cash. The affidavit contains no evidence that she used a cell phone for criminal activity. Nor can this be inferred. The affidavit does not allege that Ms. LaCosta-Franco was buying and selling drugs. She was transporting, which does not require the use of a cell phone. The instructions can be given in person. This Court should affirm.

## ARGUMENT

**The district court properly granted a motion to suppress the fruits of cell phone searches because the search warrant affidavit lacks a nexus—a bridge between evidence of the crime and the place to be searched.**

### Standard of Review

The standard of review is plenary. The Court applies the same standard as the district court: it ensures that the magistrate judge "had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (citation modified).

### Discussion

The district court properly suppressed the fruits of the cell phone searches. A search warrant requires probable cause to believe that evidence of the crime will be found in a particular place, that is, a nexus. A nexus cannot be established by *per se* rules, but turns on the facts of the case. In Ms. LaCosta-Franco's case, the search warrant affidavit lacks a nexus. It contains no evidence that Ms. LaCosta-Franco used a cell phone for criminal activity. Nor can this be inferred. The affidavit does not allege that Ms. LaCosta-Franco was buying and selling drugs. It alleges that she was "transporting" them, Gov't Br. at 29, which does not require the use of a cell phone. Such instructions can be given in person.

### A. The Fourth Amendment and the nexus requirement

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

The Founders who drafted the Fourth Amendment "reviled" the "'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Riley v. California*, 573 U.S. 373, 403 (2014). Freedom from such searches was "protection for which the Founders fought." *Id.* at 403. They drafted the warrant clause to "place obstacles in the way of a too permeating police surveillance." *Carpenter v. United States*, 585 U.S. 296, 305 (2018) (citation omitted).

Under the Fourth Amendment, a search warrant requires probable cause—a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. It "simply does not lend itself to a prescribed set of rules." *Id.* at 239.

Probable cause is assessed on the facts within the four corners of a search warrant affidavit. *See, e.g.*, *Virgin Islands v. John*, 654 F.3d 412, 420 (3d Cir. 2011). The magistrate judge must consider all the facts. This includes any facts that "weaken[] the inference" that evidence will be found in the place to be searched. *United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010).

Probable cause to search requires a connection between evidence of the crime and the place to be searched, that is, a nexus. The affidavit must show that the "'things' to be searched for and seized are located" in a particular place. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *see also Warden v. Hayden*, 387 U.S. 294, 307 (1967) (holding that probable cause must be examined for "a nexus . . . between the item to be seized and criminal behavior"). In short, there is the person and the place and "the Constitution demands a factual bridge between the two." *United States v. Wilson*, 153 F.4th 478, 485 (5th Cir. 2025).

This bridge—the nexus requirement—may be met with direct evidence or by inference. For example, there is direct evidence when an informant or police officer sees evidence in a particular place. *See, e.g.*, *United States v. Deschambault*, 176 F.4th 9, 16-17 (1st Cir. 2026) (upholding a cell phone search when an informant called the cell phone to buy crack); *United States v. Orozco*, 41 F.4th 403, 410 (4th Cir. 2022) (upholding a cell phone search when police officers saw the defendant using the phone to navigate while running drug money).

At the same time, the nexus requirement is not satisfied by inference simply because there is probable cause to arrest. *See United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). Fundamentally, the protected interests are different. Probable cause to arrest "protect[s] an individual from an unreasonable seizure. A search warrant . . . safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Steagald v. United States*, 451 U.S. 204, 213 (1981).

**B. The Fourth Amendment protects cell phone privacy.**

Cell phones contain vast reserves of information, including the most private. They are not "just another technological convenience." *Riley*, 573 U.S. at 403. Cell phones are "cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, [and] newspapers." *Id*. at 393. They "hold for many Americans 'the privacies of life.'" *Id.* at 403 (citation omitted).

Given the privacy interests at stake, searching a cell phone is nothing like searching other personal property, such as a backpack, wallet, or purse. Far from it. Equating these would be "like saying a ride on horseback is materially indistinguishable from a flight to the moon." *Id.* at 393.

Indeed, searching a cell phone is even more intrusive than "ransacking" a home. *Id.* at 396. That is because a cell phone "contains a broad array of private information never found in a home in any form—unless the phone is." *Id.* at

396-97. A cell phone may contain location information, amounting to "a virtual panopticon." *Chatrie*, 146 S. Ct. at 2210. It may contain a person's entire history with a bank, healthcare portal, Amazon, Venmo, and Google.

The Supreme Court recognizes the "unique" privacy interests at stake. *Carpenter*, 585 U.S. at 315. For this reason, it has "been careful not to uncritically extend existing precedents," such as the third-party doctrine, to the cell phone context. *Id.* at 318; *see also Chatrie*, 146 S. Ct. at 2214. In particular, *Riley* refused to allow cell phone searches incident to arrest. 573 U.S. at 403. Rather, the Supreme Court held that a police officer must obtain a search warrant based on probable cause. This was so even though *Riley* involved defendants who had been arrested for firearms offenses, *id.* at 378, and drug dealing, *id.* at 380.

### C. A cell phone warrant cannot issue for every felony drug arrest.

Police officers cannot obtain a warrant for cell phones in every felony drug case. The government claims otherwise: it seeks a *per se* rule "authorizing law enforcement to search the phones of drug dealers." Gov't Br. at 3. This argument fails. A *per se* rule conflicts with *Gates*. It cannot stand under *Riley*. It is also inconsistent with this Court's precedent on the nexus requirement. And it ignores the factual variety in drug cases. For all these reasons, a cell phone warrant requires a nexus on the facts of the case.

### 1. Under *Gates*, probable cause turns on the facts of the case, not *per se* rules.

Police officers cannot obtain a cell phone warrant in every felony drug case. This follows from basic principles of probable cause. As the Supreme Court held in *Gates*, probable cause depends on the facts of the case: it is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. at 232; *cf. United States v. Zimmerman*, 277 F.3d 426, 433 n.4 (3d Cir. 2002) (holding that "'boilerplate recitations designed to meet all law enforcement needs' do not produce probable cause") (citation omitted). These principles alone preclude a *per se* rule.

### 2. *Per se* cell phone searches cannot stand under *Riley*.

*Per se* cell phone searches for drug dealers are also impossible to square with the Supreme Court's decision in *Riley*. *Riley* holds that a police officer needs a search warrant to search an arrestee's cell phone. At no point does the opinion suggest a warrant could issue *per se*, even though the defendant in *Riley* was arrested for drug dealing. 573 U.S. at 380. This is for good reason.

The problem is that police officers could always state that, in officer training and experience, cell phones contain evidence, such as photos, videos, texts, and internet browser history. This can be reduced to boilerplate. Then it can be cut and pasted into affidavit after affidavit. If this were enough for a search warrant to

issue, then *Riley* would not offer real protection; it would just require some extra paperwork.

*Riley* is about more than paperwork. It provides real protection for cell phone privacy—as evident from the opinion itself. In *Riley*, the Supreme Court recognized the importance of its decision, both for privacy and policing. It acknowledged that a search warrant requirement for cell phones will "have an impact on the ability of law enforcement to combat crime." *Id.* at 401. It fully accepted that "[p]rivacy comes at a cost." *Id.*

The government recognizes the need for a limiting principle. It claims to seek a rule for drug dealers, not to allow cell phone search warrants "in relation to any crime." Gov't Br. at 43. But if boilerplate about police officer training and experience were sufficient, there is no reason this would be limited to drug dealers. Indeed, this follows from *Riley* itself.

In *Riley*, the Supreme Court recognized that an officer could conceive of a reason to search a cell phone for virtually any offense. "Even an individual pulled over for something as basic as speeding might well have locational data dispositive of guilt on his phone. An individual pulled over for reckless driving might have evidence on the phone that shows whether he was texting while driving." 573 U.S. at 399. An officer could aver the same for "just about any crime." *Id.*

The implications are striking, especially given the reality of overcriminalization. As Justice Gorsuch has observed, "we live in a world in which everything has been criminalized. And some professors have even opined that there's not an American alive who hasn't committed a felony . . . under some state law." Transcript of Oral Argument at 52, Lange v. California, 594 U.S. 295 (2021) (No. 20-18).

It is not enough to hope that police officers will choose to forgo cell phone searches. *Riley* requires real limits. These limits are enforced by courts in the form of the nexus requirement.

For example, police officers regularly aver that, in their training and experience, evidence of firearms or ammunition possession will be found on cell phones. But courts have refused to rely on such boilerplate absent a case-specific nexus. *See United States v. Harris*, No. 25-cr-349, 2026 WL 1945175, at *1-2, 13 (D.D.C. July 6, 2026) (rejecting boilerplate that cell phones often contain evidence such as images, videos, communications, and records in felon-in-possession cases); *United States v. Banyan*, 791 F. Supp. 3d 388, 395-97 (S.D.N.Y. 2025) (rejecting boilerplate that cell phones routinely contain selfies, correspondence, records of online purchases, and internet research); *In re Search of One Device*, 783 F. Supp. 3d 183, 188 (D.D.C. 2025) (rejecting boilerplate that people who illegally

possess firearms usually have evidence on their cell phones, such as photos, texts, and social media posts).

In contrast, court that have upheld cell phone warrants have been careful to rely on the facts of the case—not to greenlight cell phone searches "in virtually any case where there is probable cause to believe a crime was committed." *United States v. Silva*, 146 F.4th 183, 192 (2d Cir. 2025). For example, *Silva* upheld a cell phone search in a racketeering conspiracy—involving a "pattern of racketeering activity" by gang members—in which the defendant was known to commit financial crimes for the gang, used "credit cards linked to fake identities," and was arrested with a forged driver's license and debit card. *Id.* at 192. These were "particular . . . factual allegations linking the alleged crimes to the place to be searched." *Id.*; *see also United States v. Ivey*, 91 F.4th 915, 917-18 (8th Cir. 2024) (upholding cell phone search in a firearms case where the defendant posted a photo of a firearm on his Facebook account).

### 3. This Court's nexus cases do not allow for a *per se* rule.

This Court's nexus cases do not allow for a *per se* rule either. The Court does not allow police officers to search the homes of suspected drug dealers automatically. The same must be so for cell phones.

In its brief, the government claims that "cell phones of drug dealers, like their residences, contain evidence of their crimes and a search thereof is

warranted." Gov't Br. at 21. This is not accurate. The Court has repeatedly held the opposite: that an arrest for drug dealing "does not automatically provide probable cause to search the arrestee's home." *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (citation omitted).

To search a home, the Court requires a nexus on the facts of the case. There must be "evidence linking the targeted location to the suspect's drug activities." *United States v. Williams*, 974 F.3d 320, 351 (2020) (citation modified). This is so even for large-scale drug dealers. In the nexus analysis, "large-scale operations" is just one of many, non-exhaustive factors that a court may consider. *United States v. Stearn*, 597 F.3d 540, 559-60 (3d Cir. 2010).

Several cases illustrate this case-specific approach. *Stearn*, for example, upheld the search of a home, 4049 Higbee, based on multiple factors: an informant told the police the defendant was running a "cocaine business" *id.* at 545; the defendant made observed sales; and he tried to deceive the police about his home address, *id.* at 563-65. *Williams*, likewise, upheld an apartment search on the facts of the case: the police had tips that the defendant was buying and selling drugs; he sold near his apartment; and he left his apartment to go sell drugs. 974 F.3d at 351-52. Also, the defendant "was not an occasional street-level dealer" but had "consistently sold and supplied crack" for months. *Id.* at 351. *Hodge* too upheld the search of a home based on the "cumulative evidence." 246 F.3d at 307. The

defendant was arrested for selling crack at "scale," was not engaged in an "isolated deal," and was dealing near his home. *Id.* at 306.

The same case-specific approach must apply to cell phones. If the home is private, a cell phone is even more private. What makes "the home sacred—that it contain[s] personal and professional effects and correspondences, photographs and videos of family and loved ones, sensitive financial information, etc.—is truer now for phones than the home." *In re Search of One Device*, 783 F. Supp. 3d at 189. Searching a cell phone is "far *more*" exposing. *Riley*, 573 U.S. at 396.

Other Courts of Appeals have applied the nexus requirement to cell phones and require a case-specific approach. For example, the Fourth Circuit has held that "just as it is *sometimes* reasonable to believe that a [drug] suspect's home may contain evidence of their crimes, it *might* be reasonable to believe that his cellphone will." *Orozco*, 41 F.4th at 411 n.9 (emphasis added). Likewise, the First Circuit will not rely solely on "a generalized statement that drug dealers often use cellphones to conduct their business." *United States v. Lindsey*, 3 F.4th 32, 40 (1st Cir. 2021); *see also In re Search of Certain Cell Phones*, 541 F. Supp. 2d 1, *2 (D.D.C. 2008) (rejecting a cell phone warrant where suspect owned a garage containing a large quantity of drugs).

In contrast, the government invokes the Eighth Circuit's decision in *United States v. Eggerson*, 999 F.3d 1121 (8th Cir. 2021). This is opinion unpersuasive. In

*Eggerson*, an informant made two controlled drug buys, which the Court inferred must have been arranged by cell phone. *Id.* at 1123, 1127. That should have resolved the case. Yet the opinion went on to espouse a "virtual certainty that drug dealers use cell phones." *Id.* at 1127. This is dicta. And it falls into the trap of dicta generally—it fails to consider other facts that the next case could present.

#### 4. A *per se* rule fails to account for the factual variety in drug cases.

A *per se* rule cannot stand under *Gates*, *Riley*, and the nexus cases. Yet the government seeks such a rule for the cell phones of drug dealers. It argues a syllogism: buying and selling drugs requires coordination; coordination requires cell phones; therefore, police officers can always obtain a search warrant for a drug dealer's cell phone. Gov't Br. at 3, 21, 31, 38, 42-44. It claims this "conclusion is inescapable." Gov't Br. at 42.

The government's syllogism fails factually. Felony drug arrests come in many fact patterns. Arrestees have different roles. And not every role involves a cell phone. This is demonstrated by three examples.

First, some defendants deliver drugs for a boyfriend, spouse, or other family member. They need not use a cell phone. Rather, their instructions may be given in person. For example, the Guidelines contemplate a girlfriend who "knows about her boyfriend's ongoing drug-trafficking activity, but agrees to participate on only one occasion by making a delivery for him at his request." U.S.S.G. § 1B1.3 cmt.

n.4(C)(v). This fact pattern is reflected in the cases. *See, e.g.*, *United States v. Hoffler*, No. 22-4101, 2022 WL 17974625, at *1 (4th Cir. Dec. 28, 2022) (not precedential) (describing girlfriend who delivered drugs for her live-in boyfriend at his direction); *United States v. Abdullah*, 127 F.3d 1100, at *1 (4th Cir. 1997) (not precedential) (describing wife who delivered seventeen bundles of heroin to a stash house for her kingpin husband); *cf.* U.S.S.G. § 2D1.1(e)(2)(B)(ii) (recognizing that drug offenses may arise from an "intimate or familial relationship").

Second, some people engage in drug trafficking by diverting their own prescription pills. For example, consider a "student who routinely uses a friend's Adderall to cram for exams." *United States v. Hemani*, 146 S. Ct. 1677, 1689 (2026). In this example, the student's friend could be arrested for drug trafficking. But she may not have used a cell phone. This could all play out in a high school hallway or college dorm room.

Third, some circumspect drug dealers do not use a cell phone for criminal activity, or at all. A drug dealer has "every incentive" not to use a cell phone for criminal activity. *United States v. Griffith*, 867 F.3d 1265, 1274 (D.C. Cir. 2017). In *Griffith*, for example, a gang member "was known not to have a cell phone." *Id.* at 1273. When he needed to speak to someone on the phone, another person walked one over to his house. *See id.* at 1269. A drug dealer can stay off the phone entirely by delegating certain tasks, and the associated risk, to a confederate.

The government dismisses the notion of in-person communication. To the government, "[t]he bottom line is that . . . cell phones are now used for all transactions and interactions in contemporary life." Gov't Br. at 44. But in-person communication still occurs—as illustrated by the government's own baseball hypothetical. The government hypothesizes: "If a person tells a companion the live score of a baseball game, it is probable that she used her phone to look up the score." Gov't Br. at 44. (The score is on TV too, of course, but that is not the point). The point is that the hypothetical has two people communicating *in person* about the game. One person uses her cell phone to look up the score. The other does not use a cell phone; she finds out the score by asking someone in person.

### D. The search warrant affidavit fails to establish a nexus in Ms. LaCosta-Franco's case.

In Ms. LaCosta-Franco's case, the search warrant affidavit fails to establish the requisite nexus. The affidavit contains no evidence that Ms. LaCosta-Franco used a cell phone for criminal activity. For example, no informant contacted her by phone to buy drugs. This leaves the government arguing by inference, but a nexus cannot be inferred on the facts of this affidavit. The affidavit does not allege buying and selling drugs; it alleges transportation, which does not require a cell phone. Such instructions can be given in person.

### 1. The affidavit alleges transporting drugs, not buying and selling.

A nexus cannot be inferred on the facts of the search warrant affidavit. Police officers happened across Ms. LaCosta-Franco in a stolen pickup truck, with a large quantity of drugs, paraphernalia, cell phones, and no cash. She was "transporting" drugs in the truck. Gov't Br. at 29. There is no reason to assume this required a cell phone. Her instructions could have been given in person.

The government assumes that Ms. LaCosta-Franco was not only delivering, but also buying and selling drugs. Gov't Br. at 20, 31, 35, 44. It claims she must have used a cell phone "to acquire the large stash of drugs she possessed and to plan to distribute them." Gov't Br. at 20. And it argues that "[n]o drug trafficker—including LaCosta-Franco—could plausibly conduct a drug trafficking operation without a cell phone to communicate with suppliers, coconspirators, and buyers to acquire and amass a stash of narcotics, coordinate storage and distribution, set pricing and financial terms, sell to buyers, etc." Gov't Br. at 31.

Yet the affidavit contains no evidence that Ms. LaCosta-Franco played any of these roles. She was not buying and selling drugs, let alone "conduct[ing] a drug trafficking operation." She did not sell drugs to an informant or undercover officer. She did not make hand-to-hand drug sales. She was not running a drug business per an informant. She did not even have any cash. The government itself concedes that she might have been "entrusted with" the drugs. Gov't Br. at 35.

Ms. LaCosta-Franco is nothing like the defendants in the nexus cases who were in the business of buying and selling drugs. *See, e.g.*, *Williams*, 974 F.3d at 352 (noting that the defendant "consistently sold and supplied crack"); *Stearn*, 597 F.3d at 545 (noting that the defendant was running a "cocaine business"); *Hodge*, 246 F.3d at 306 (noting that the defendant was "an experienced and repeat drug dealer"). Defendants like these may need to use a cell phone. But the affidavit does not allege that Ms. LaCosta-Franco was running a drug business; it alleges that she was driving.

**2. The government's other arguments fail.**

In addition to its claims about buying and selling drugs, the government argues (1) that Ms. LaCosta-Franco purportedly concealed her cell phones and (2) that having two cell phones is evidence of drug dealing. These arguments fail.

**i. There is nothing usual about putting a cell phone in your pocket.**

The government defends the cell phone searches by repeatedly claiming that Ms. LaCosta-Franco tried to "conceal" her cell phones. Gov't Br. at 6, 9, 19, 29, 46 n.6. This is inaccurate. Ms. LaCosta-Franco put them in her pockets.

To be sure, real concealment is relevant to probable cause. In *Stearn*, the defendant concealed his real estate holdings by titling them "suspiciously." 597 F.3d 564. In *Burton*, the defendant concealed his home address by refusing to give it to the police and lying about where he lived. *See United States v. Burton*, 288

F.3d 91, 95, 104-05 (3d Cir. 2002). In *Whitner*, the defendant concealed his home address by lying about living with his mother. *See United States v. Whitner*, 219 F.3d 289, 294-95 (3d Cir. 2000). And in *Orozco*, the defendant concealed five micro-SD cards by hiding them in his shoe and later trying to eat them. 41 F.4th at 409.

Such examples of real concealment are nothing like this case. This affidavit states that while officers were detaining Ms. LaCosta-Franco, she "repeatedly slipped her handcuffs—meaning she repeatedly moved them down her wrists and off of her hands—and attempted to conceal items in her pockets, including SUBJECT DEVICE-I and SUBJECT DEVICE-2. At this time, LACOSTA-FRANCO was placed under arrest . . . ." Appx54.

This portion of the affidavit alleges three facts: (1) that Ms. LaCosta-Franco put her cell phones in her pockets; (2) that she did this right in front of the police officers; and (3) that she did this as she was being arrested and handcuffed. This is not concealment. There is nothing unusual about putting a cell phone away—in a bag, a purse, or a pocket. This is an ordinary, non-criminal act, which does not require an explanation. Even if an explanation were required, Ms. LaCosta-Franco could not possibly keep anything in her hands because she was being arrested and handcuffed.

Lest there be any confusion, it is irrelevant that a police officer used the verb "to conceal" in the affidavit. Appx54. The police officer's role is to describe the facts; legal issues like "concealment" are for the neutral court. *See Gates*, 462 U.S. at 240. The district court did not find concealment. In fact, it held the opposite—distinguishing a different affidavit that involved "concealment of [drug] activity" from this one where "[n]one of those facts are presented." Appx21.

**ii. There is nothing unusual about having two cell phones.**

The government also pounds the fact that Ms. LaCosta-Franco had two cell phones. Gov't Br. at 3, 4, 6, 8, 9, 11, 17 n.3, 19, 21, 29, 39, 47 n.7, 58; *see also* Gov't Br. at 13, 31, 32, 46 n.6 ("multiple cell phones"). This is unavailing.

There is nothing unlawful or even unusual about having two cell phones. Today, many people have one phone for work and one for personal use. In *Carpenter*, the Supreme Court noted that cell phone accounts exceeded people in the U.S. by 70 million; and this was in 2018. 585 U.S. at 300.

Ms. LaCosta-Franco could have had two cell phones for the same reason that many people do: one for personal use and one for legitimate employment. Indeed, many people arrested for drug offenses are also working legitimate jobs. *See, e.g.*, *Hoffler*, 2022 WL 17974625, at *1 (noting that the girlfriend of a drug dealer was helping him while also in graduate school and working); *United States v. Best*, 639 F. App'x 848, 850 (3d Cir. 2016) (not precedential) (noting that the girlfriend of a

drug dealer was helping him and working as a pharmacy technician); *Abdullah*, 127 F.3d at *1 (noting that the wife of a drug kingpin was helping him and working for Amtrak).

### E. The good faith exception does not apply.

The district court properly suppressed the fruits of the cell phone search. The affidavit lacks a nexus. Given this weakness, no officer would reasonably rely on the search warrant. What is more, no drug evidence was suppressed; the government could have gone right to trial, as it initially suggested it would.

#### 1. The good faith exception and its limitations

The fruits of an unconstitutional search must generally be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). Suppression deters conduct that violates the rights of American citizens. *See Zimmerman*, 277 F.3d at 436. It furthers "police professionalism" and "has helped police more effectively secure good evidence without violating" the Constitution. *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013).

Still, an exception is sometimes made for good faith. As relevant here, evidence is admissible when police officers rely in good faith on a search warrant later held to be defective. *United States v. Leon*, 468 U.S. 897, 922 (1984). This accounts for the cost of suppression, especially the cost of allowing a defendant to "go free." *Id.* at 907.

The good faith exception has its own limits. "When the Supreme Court announced the good faith exception in *Leon*, it weakened the exclusionary rule, but it did not eviscerate it. 'Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble.'" *Zimmerman*, 277 F.3d at 437-38 (citation omitted). The good faith exception does not apply, among other reasons, when a warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (citation omitted); *see also John*, 654 F.3d at 418 (same).

Courts have repeatedly rejected the good faith exception when an affidavit lacks a nexus to a drug dealer's home. *See, e.g.*, *United States v. Blasdel*, 153 F.4th 1069, 1076 (10th Cir. 2025) (suppressing evidence from a drug dealer's home when police officers had raided his storage unit and seized firearms and several pounds of methamphetamine); *United States v. Brown*, 828 F.3d 375, 385-86 (6th Cir. 2016) (suppressing evidence from a home when the defendant was found in a car with a drug dealer, dogs alerted to the presence of drugs, the defendant had a drug-related text on his cell phone, and he had five thousand dollars in cash); *Underwood*, 725 F.3d at 1086 (suppressing evidence from a home when the defendant helped drug traffickers move two crates later found to contain thousands of ecstasy pills).

### 2. The good faith exception does not apply in Ms. LaCosta-Franco's case.

In Ms. LaCosta-Franco's case, the district court properly rejected the good faith exception and suppressed the fruits of the cell phone searches. Appx32-33. It was unreasonable to rely on the search warrant because the affidavit lacks a nexus. This is so for all the reasons above. Ms. LaCosta-Franco was in a stolen pickup truck, with a large quantity of drugs, paraphernalia, and no cash. The affidavit does not allege that she was buying and selling drugs. Rather, the facts are consistent with transporting the contraband, which does not require a cell phone.

What is more, no drug evidence was suppressed. The government could have gone to trial and initially suggested it would. Appx127-28. Even now, it argues that Ms. LaCosta-Franco was "literally . . . sitting" on the drugs. Gov't Br. at 20; *see also* Gov't Br. at 3, 6, 29, 34, 35. The district court correctly found that the "cost to the Government . . . is low." Appx35.[6]

### 3. There is no evidence of prosecutor review and approval.

The government attempts to bolster its case for the good faith exception by claiming that a prosecutor reviewed and approved the affidavit. This is not supported by the record.

---

[6] The government also argues that the good faith exception should apply because the affidavit is 42 paragraphs long. Gov't Br. at 54, 59. But length is immaterial for boilerplate; long or short, it can be cut and pasted with the same few keystrokes.

The good faith exception generally turns on the facts within the four corners of the affidavit. A court will not defer to a search warrant "based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Leon*, 468 U.S. at 915 (quoting *Gates*, 462 U.S. at 239); *see also John*, 654 F.3d at 420 (rejecting the good faith exception for lack of "probable cause within the affidavit's four corners").

The four-corners rule has a narrow exception for certain facts about the warrant application process. Specifically, it may be relevant to good faith that a prosecutor "reviewed and approved" the warrant application. *Messerschmidt v. Millender*, 565 U.S. 535, 554 (2012).

The government claims there was prosecutor review and approval here: that a police officer "submitted the affidavit for review by a prosecutor, as the district court acknowledged." Gov't Br. at 55 (citing Appx35 n.20). There is no such record. In district court, the government rested on the affidavit. Appx11, 88-90. At the most, counsel for the government represented that a prosecutor "consulted" in some way. Appx92. The court noted this representation: "[t]he Government represented . . . it works in consultation with law enforcement to produce these warrants." Appx35 n.20. The court did not make a fact-finding, and could not since

there is no evidence.[7]

For all these reasons, the district court reached the right result. This Court should affirm the grant of suppression. Just as importantly, it should validate the privacy interests at stake: that "Americans ha[ve] 'as against the Government, the right to be let alone' and that the Fourth Amendment must protect against 'every unjustifiable intrusion by the Government upon the privacy of the individual, whatever the means employed.'" *Chatrie*, 146 S. Ct. at 2216-17 (citation omitted).

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's order suppressing evidence.

Respectfully submitted,

*<u>/s/ Abigail E. Horn</u>*
ABIGAIL E. HORN
Assistant Federal Defender
Chief of Appeals

LISA EVANS LEWIS
Chief Federal Defender

---

[7] Even when it occurs, unlike here, review and approval is not "dispositive." *Messerschmidt*, 565 U.S. at 554. The Court does not give this "undue weight" because "[p]rosecutors are, of course, not 'neutral judicial officers.'" *United States v. Katzin*, 769 F.3d 163, 184 (3d Cir. 2014) (en banc) (quoting *Leon*, 468 U.S. at 917). If an interested prosecutor could validate a search warrant, it would turn the warrant requirement on its head. *See Gates*, 462 U.S. at 240.

**CERTIFICATION OF BAR MEMBERSHIP**

It is hereby certified that Abigail E. Horn is a member of the bar of the Court of Appeals for the Third Circuit.

**CERTIFICATION OF WORD COUNT**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as amended December 1, 2024, because it contains 7,660 words, as counted by Microsoft Office 365 word count software, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in font size 14, type style Times New Roman.

**CERTIFICATION THAT E-BRIEF AND HARD COPY ARE IDENTICAL and THAT THE E-BRIEF HAS BEEN VIRUS CHECKED**

I hereby certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court. I further certify that the electronic version of the attached brief was automatically scanned by Apex Trend Micro, version 21.273.00, and found to contain no known viruses.

**CERTIFICATION OF SERVICE**

I hereby certify that I caused this document to be electronically filed through the Third Circuit Court of Appeals' Electronic Case Filing (NextGen CM/ECF) system and thereby served copies upon all counsel of record.

*/s/ Abigail E. Horn*
ABIGAIL E. HORN

DATE: August 27, 2026