No. 26-2028

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

GRISELLE LaCOSTA-FRANCO,

*Defendant-Appellee*.

APPEAL FROM ORDER SUPPRESSING EVIDENCE
IN CRIMINAL NO. 26-027 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA, NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, AND ELECTRONIC FRONTIER FOUNDATION IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE


Andrew Crocker
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
andrew@eff.org

Laura Moraff
Nathan Freed Wessler
Brett Max Kaufman
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
lauramoraff@aclu.org


*Counsel continued on next page*

Witold J. Walczak
PA Bar No. 62976
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
(412) 681-7864
vwalczak@aclupa.org

Michael W. Price
*Litigation Director, Fourth Amendment Center*
Lisa Mathewson
*Vice Chair*, *Amicus Committee*
NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS
1660 L. St. NW, 12th Fl.
Washington, DC 20036
mprice@nacdl.org
lisa.mathewson@mathewson-law.com

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Amici Curiae American Civil Liberties Union, American Civil Liberties Union of Pennsylvania, National Association of Criminal Defense Lawyers, and Electronic Frontier Foundation disclose that they have no parent corporations and that no publicly held corporations hold 10% or more of their stock.

Dated: September 3, 2026 *<u>/s/ Laura Moraff</u>*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ........................................................................... iii

INTEREST OF AMICI CURIAE ........................................................................ 6

ARGUMENT ............................................................................................... 7

I. A warrant to search a cell phone implicates heightened privacy interests ........................................................................................ 9

II. A warrant to search a cell phone must be supported by case-specific facts establishing a nexus between the phone and the crime under investigation ........................................................................ 11

CONCLUSION .......................................................................................... 19

COMBINED CERTIFICATIONS .................................................................... 20

CERTIFICATE OF SERVICE ........................................................................ 21

## TABLE OF AUTHORITIES

### Cases

*Armendariz v. City of Colorado Springs*,
168 F.4th 627 (10th Cir. 2026) .......... 7, 15

*Boyd v. United States*,
116 U.S. 616 (1886) .......... 9

*Buckham v. State*,
185 A.3d 1 (Del. 2018) .......... 14

*Carpenter v. United States*,
585 U.S. 296 (2018) .......... 6, 7, 17

*Chatrie v. United States,*
146 S. Ct. 2193 (2026) .......... 6, 12

*Chimel v. California*,
395 U.S. 752 (1969) .......... 12

*Commonwealth v. Broom*,
52 N.E.3d 81 (Mass. 2016) .......... 13, 14, 16

*Commonwealth v. Dorelas*,
43 N.E.3d 306 (Mass. 2016) .......... 13

*Commonwealth v. Morin*,
85 N.E.3d 949 (Mass. 2017) .......... 16, 17

*Commonwealth v. White*,
59 N.E.3d 369 (Mass. 2016) .......... 14

*Gibbs v. United States*,
355 A.3d 206 (D.C. 2026) .......... 14

*Kyllo v. United States*,
533 U.S. 27 (2001) .......... 10, 13

*Maryland v. Garrison*,
480 U.S. 79 (1987) .......... 12

*Mink v. Knox*,
613 F.3d 995 (10th Cir. 2010) ..................................................................12

*Payton v. New York*,
445 U.S. 573 (1980)..............................................................................10

*People v. Matthew*,
2026 VI 9 (May 28, 2026) ....................................................................14

*Reno v. ACLU*,
521 U.S. 844 (1997)................................................................................6

*Riley v. California*,
573 U.S. 373 (2014)....................................................................... *passim*

*State v. Baldwin*,
664 S.W.3d 122 (Tex. Crim. App. 2022) ............................................ 14, 15, 18

*State v. Keodara*,
364 P.3d 777 (Wash. Ct. App. 2015)................................................... 13, 14, 16

*State v. Schubert*,
219 N.E.3d 916 (Ohio 2022). ................................................................16

*Taylor v. State*,
260 A.3d 602 (Del. 2021) ......................................................................13

*United States v. Brown*,
828 F.3d 375 (6th Cir. 2016) ..................................................................8

*United States v. Carpenter*,
360 F.3d 591 (6th Cir. 2004) ..................................................................8

*United States v. Di Re*,
332 U.S. 581 (1948)..............................................................................17

*United States v. Griffin*,
No. 22-4257, 2026 WL 2357208 (4th Cir. Aug. 14, 2026)...............................17

*United States v. Harris*,
No. 25-CR-349, 2026 WL 1945175 (D.D.C. July 6, 2026) ..............................13

*United States v. LaCosta-Franco*,
828 F. Supp. 3d 543 (E.D. Pa. 2026)....................12

*United States v. Lyles*,
910 F.3d 787 (4th Cir. 2018) .................... 17, 18

*United States v. Perez*,
712 F. App'x 136 (3d Cir. 2017) ....................9, 11

*United States v. Ramirez*,
180 F. Supp. 3d 491 (W.D. Ky. 2016)....................17

*United States v. Schultz*,
14 F.3d 1093 (6th Cir. 1994) ....................15

*Warden, Maryland Penitentiary v. Hayden*,
387 US 294 (1967)....................8

*Winston v. Lee*,
470 U.S. 753 (1985)....................8

**Other Authorities**

John Elmore, *How Much Is 64GB of Music?* The Techy Life (Apr. 14, 2024), https://perma.cc/V82U-W2A5 ....................10

Logan Koepke et al., *Mass Extraction: The Widespread Power of U.S. Law Enforcement to Search Mobile Phones* 10, Upturn (Oct. 2020), https://perma.cc/BRT3-EWDF ....................11

*Neil Gorsuch*, PBS (Aug. 16, 2024), https://tinyurl.com/4js7mtd3 ....................18

Travis Sharrow, *Unlocking the Magic: Discover How Many iPhone Pictures 64GB Can Store!*, Soft Hand Tech (Mar. 17, 2025), https://perma.cc/5YTR-8ZLG ....................10

Voye Global Team, *How Much Data iMessage Uses and How to Check Your Usage*, Voye Global (Mar. 17, 2025), https://perma.cc/W7WL-W37D....................10

## INTEREST OF AMICI CURIAE[1]

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization dedicated to defending the principles embodied in the federal Constitution and our nation's civil rights laws. The ACLU of Pennsylvania is a state affiliate of the ACLU. The ACLU and the ACLU of Pennsylvania have a long-standing interest in protecting privacy rights in the face of evolving technologies. The ACLU and the ACLU of Pennsylvania have frequently appeared before the United States Supreme Court and other courts across the country in cases implicating Americans' rights in the digital age, including as counsel in *Carpenter v. United States*, 585 U.S. 296 (2018) and *Reno v. ACLU*, 521 U.S. 844 (1997), and as amicus in *Chatrie v. United States*, 146 S. Ct. 2193 (2026) and *Riley v. California*, 573 U.S. 373 (2014).

The National Association of Criminal Defense Lawyers ("NACDL") is a nonprofit voluntary professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct. Founded in 1958, NACDL has a nationwide membership of over 10,000

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for Amici Curiae certifies that no person or entity, other than Amici Curiae, its members, or its counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. All parties to this case have consented to the filing of this amici curiae brief, which complies with the timing requirements of Fed. R. App. P. 29(a)(6).

direct members, and up to 40,000 with affiliates, comprised of private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges. NACDL has a particular interest in cases that involve surveillance technologies and programs that pose new challenges to personal privacy. NACDL operates the Fourth Amendment Center and was co-counsel in *Chatrie v. United States*. NACDL has filed numerous amicus briefs on issues involving digital privacy rights, including *Jones*, *Riley*, and *Carpenter*.

The Electronic Frontier Foundation ("EFF") is a nonprofit civil liberties organization with more than 30,000 dues-paying members. Founded in 1990, EFF represents the interests of technology users in court cases and broader policy debates surrounding the application of law to technology. EFF regularly participates both as direct counsel and as amicus in the Supreme Court, this Court, and other state and federal courts in cases addressing the Fourth Amendment and its application to new technologies. *See*, *e.g., Carpenter v. United States*, 585 U.S. 296 (2018); *Riley v. California*, 573 U.S. 373 (2014); *Armendariz v. City of Colorado Springs*, 168 F.4th 627 (10th Cir. 2026).

## ARGUMENT

Given the ubiquity of cell phones in modern life, and the trove of private information they contain, law enforcement often seeks to access their contents. It is axiomatic that, when law enforcement seeks to conduct any search or seizure, their

warrant application must establish "a nexus . . . between the item to be seized and criminal behavior." *Warden, Md. Penitentiary v. Hayden*, 387 US 294, 307 (1967). In any type of search, "[t]he connection between the [place to be searched] and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)). But "the Fourth Amendment's command that searches be 'reasonable' requires that when the State seeks to intrude upon an area in which our society recognizes a significantly heightened privacy interest, a more substantial justification is required to make the search 'reasonable.'" *Winston v. Lee*, 470 U.S. 753, 767 (1985). Because authorization to search a cell phone gives law enforcement access to "a digital record of nearly every aspect of [peoples'] lives—from the mundane to the intimate," *Riley*, 573 U.S. at 395, courts must ensure scrupulous adherence to the Fourth Amendment's requirement that a warrant application establish a nexus between the probable cause showing and the place to be searched and things to be seized.

Amici respectfully submit this brief to discuss (I) why society recognizes a significantly heightened privacy interest in modern cell phones, and (II) that warrants to search cell phones must be based on case-specific facts establishing a nexus between the phone and the alleged crime under investigation.

## I. A warrant to search a cell phone implicates heightened privacy interests.

Modern cell phones "hold for many Americans 'the privacies of life.'" *Riley*, 573 U.S. at 403 (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)). The Supreme Court recognized over a decade ago that cell phones' "immense storage capacity" implicates privacy in novel and complex ways. *Riley*, 573 U.S. at 393–94; *see also United States v. Perez*, 712 F. App'x 136, 139 (3d Cir. 2017) ("the place to be searched encompasses much more information in a search of digital storage than in one of physical space").

"[A] cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record." *Riley*, 573 U.S. at 394. This means that authorization to search a cell phone necessarily puts a wide array of information—much of which will be unrelated to any crime under investigation—at law enforcement's fingertips.

Even an examination of a single type of data on a cell phone will "convey far more than previously possible." *Id.* Modern smartphones can now store more than

15,000 photographs,[2] 12,000 songs,[3] or 64 million 100-character text messages.[4] A warrant to search a cell phone thus allows law enforcement to reconstruct "[t]he sum of an individual's private life" by, for example, using "a thousand photographs labeled with dates, locations, and descriptions." *Id.*

The Fourth Amendment has long treated a person's home as his "castle," *Payton v. New York*, 445 U.S. 573, 596 (1980), in recognition of the home's status as "the prototypical . . . area of protected privacy." *Kyllo v. United States*, 533 U.S. 27, 34 (2001). Yet, in today's world, a cell phone "not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form." *Riley*, 573 U.S. at 396–97.

Moreover, the practical realities of cell phone searches implicate privacy concerns with little analogy to those involved in the search of a home. Even where law enforcement obtains a properly scoped warrant to search only that data on a cell phone for which there is probable cause, police personnel often initiate the search

---

[2] Travis Sharrow, *Unlocking the Magic: Discover How Many iPhone Pictures 64GB Can Store!*, Soft Hand Tech (Mar. 17, 2025), https://perma.cc/5YTR-8ZLG.

[3] John Elmore, *How Much Is 64GB of Music?* The Techy Life (Apr. 14, 2024), https://perma.cc/V82U-W2A5.

[4] *See* Voye Global Team, *How Much Data iMessage Uses and How to Check Your Usage*, Voye Global (Mar. 17, 2025), https://perma.cc/W7WL-W37D.

by making a digital copy of everything on the device.[5] This copy, also known as an "extraction," typically includes every single file on the device, intermingling "responsive and non-responsive data." *Perez*, 712 F. App'x at 140.[6] And where police departments fail to restrict the retention or future use of extractions, authorization to search a cell phone, practically speaking, leaves all of the data on the phone vulnerable to rummaging for months or years to come.[7]

Given that the search of a cell phone is even more revealing than "the most exhaustive search of a house," *Riley*, 573 U.S. at 396–97, it is particularly important that such searches be justified by probable cause to believe the phone actually contains evidence of the crime under investigation.

## II. A warrant to search a cell phone must be supported by case-specific facts establishing a nexus between the phone and the crime under investigation.

As the district court correctly recognized, a warrant application to search a cell phone must be based on case-specific facts establishing a link or "nexus" between the phone and the particular criminal activity under investigation, and no reasonable officer would believe that this nexus requirement could be disregarded in

[5] Logan Koepke et al., *Mass Extraction: The Widespread Power of U.S. Law Enforcement to Search Mobile Phones* 10, Upturn (Oct. 2020), https://perma.cc/BRT3-EWDF.
[6] *See also id.* at 10.
[7] *See id.* at 53.

the context of a cell phone search. *United States v. LaCosta-Franco*, 828 F. Supp. 3d 543, 547, 561 (E.D. Pa. 2026).

There is no question that unrestrained searches of people's most private spaces would sometimes turn up evidence of crime. But the Framers believed that such searches were unreasonable absent particularized probable cause—and thus required that warrants be limited "to the specific areas and things for which there is probable cause to search." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). By requiring that warrants "contain sufficiently particularized language that creates a nexus between the suspected crime and the items to be seized" and searched, the Fourth Amendment prevents searches of homes or other private places until law enforcement develops probable cause to justify the search. *Mink v. Knox*, 613 F.3d 995, 1010 (10th Cir. 2010). These guardrails were imposed "not to shield criminals nor to make the home a safe haven for illegal activities." *Chimel v. California*, 395 U.S. 752, 761 (1969). They were imposed to serve the "high function" of protecting the "precious" right of privacy by ensuring that there is reason to believe evidence will be found in the place to be searched before permitting police to "violate the privacy of the home" or another private space. *Id.* at 761.

As technology evolves, courts must "assure [] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted." *Chatrie v. United States,* 146 S. Ct. 2193, 2205 (2026) (quoting *Kyllo*, 533 U.S. at

34). The quantity and quality of information available through cell phone searches require that there be a "more narrow and demanding standard" to justify the search of a cell phone "than exists for establishing probable cause to search physical containers or other physical items or places," *Commonwealth v. Broom*, 52 N.E.3d 81, 89 (Mass. 2016) (quoting *Commonwealth v. Dorelas*, 43 N.E.3d 306, 312 (Mass. 2016)); *Cf. Taylor v. State*, 260 A.3d 602, 613, 614 (Del. 2021) (recognizing that the "scope and intimacy of the information" at issue in a cell phone search necessitates "greater protections than other forms of property").

In particular, "it is not enough that the object of the search *may* be found in the place subject to search . . . Rather, the affidavit must demonstrate that there is a reasonable expectation that the items sought *will* be located in the particular data file or other specifically identified electronic location that is to be searched." *Broom*, 52 N.E.3d at 89; *see also State v. Keodara*, 364 P.3d 777, 782 (Wash. Ct. App. 2015) ("more is required for the necessary nexus than the mere possibility of finding records of criminal activity.").

In order to search a cell phone, law enforcement must inform the magistrate judge of *case-specific facts* linking the cell phone to the particular crime under investigation—making it likely that the evidence sought will be located in the electronic location to be searched. *See, e.g.*, *United States v. Harris*, No. 25-CR-349, 2026 WL 1945175, at *10 (D.D.C. July 6, 2026); *Commonwealth v. White*, 59

N.E.3d 369, 376 (Mass. 2016); *Keodara*, 364 P.3d at 782. Even where it is reasonable to assume that a person had a cell phone during an allegedly illegal incident, and that the cell phone might contain data relevant to the alleged crime, a case-specific "nexus must still be established between evidence sought and the alleged crime committed to justify the search." *Gibbs v. United States*, 355 A.3d 206, 216–17 (D.C. 2026). As the Supreme Court of the Virgin Islands recently held, permitting cell phone searches without requiring facts indicating "that a cell phone was used in the furtherance of the crime" would condone "speculative and unsupported reasoning" and would not be "in the interest of justice." *People v. Matthew*, 2026 VI 9, ¶ 19 (May 28, 2026).

Thus, the requisite nexus is not established by an officer's general or conclusory opinion that "there is probable cause to believe that the [defendant's] cell phone and its associated accounts . . . will likely contain information pertinent to this investigation." *Broom*, 52 N.E.3d at 90 (alterations in original); *accord State v. Baldwin*, 664 S.W.3d 122, 135 (Tex. Crim. App. 2022) (affidavit failed to establish probable cause where there was "no information included that suggest anything beyond mere speculation that Appellee's cell phone was used before, during, or after the crime"). Nor is the requisite nexus established by "generic, boilerplate language about cell phone use among criminals." *Baldwin*, 664 S.W.3d at 134; *See also Buckham v. State*, 185 A.3d 1, 17 (Del. 2018) ("Particularly unpersuasive was the

statement that ‘criminals often communicate through cellular phones’ (who doesn’t in this day and age?)”) (footnote omitted).

This remains true even where officers aver that their generalizations or conclusory statements are based on their training and experience. “While an officer’s ‘training and experience’ may be considered in determining probable cause . . . it cannot substitute for the lack of evidentiary nexus.” *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) (citations omitted); *see also Baldwin*, 664 S.W.3d at 135 (“[T]he magistrate erred by substituting the evidentiary nexus for the officer’s training and experience and generalized belief that suspects plan crimes using their phones.”). Thus, the Tenth Circuit recently held that an officer’s “training and experience” that “people who engage in illegal protest activity frequently carry their phones with them to take photos of their activity and message others who are also participating in illegal protest activity” and that “phones regularly track the location of their user and can show where a person is at a given date and time” failed to establish the requisite nexus between the electronic devices to be searched and an alleged attempted assault at a protest—calling the purported nexus “extremely flimsy and speculative.” *Armendariz*, 169 F.4th at 1047, 1055.

Considering an affidavit citing the affiant’s training and experience that “cellular telephones contain multiple modes used to store vast amounts of electronic data[,]” and that in his opinion, “there is probable cause to believe that the

[defendant's] cell phone and its associated accounts . . . will likely contain information pertinent to this investigation," the Massachusetts Supreme Court held that this "general, conclusory statement adds nothing to the probable cause calculus." *Broom*, 52 N.E.3d at 90 (alterations in original) (footnote omitted); *see also Keodara*, 364 P.3d at 782–83 (affidavit's citation to officer's "wealth of specific experience and training" amounted to "blanket statements and broad generalizations" that were "not particular to [the defendant] or his commission of any offense"). Similarly, where an affiant had "base[d] his assertion that the cell phones 'may' contain evidence of an aggravated vehicular homicide on his 'knowledge, training and experience,'" but did "not venture to explain what that knowledge, training, or experience amounts to, let alone how it relates to the facts of this case," the Ohio Supreme Court held that "the affidavit's language [was] wholly conclusory as to the existence of probable cause to search the cell phones." *State v. Schubert*, 219 N.E.3d 916, 923 (Ohio 2022).

Officers also cannot establish the requisite nexus by "rely[ing] on the general ubiquitous presence of cellular telephones in daily life, or an inference that friends or associates most often communicate by cellular telephone, as a substitute for particularized information that a specific device contains evidence of a crime." *Commonwealth v. Morin*, 85 N.E.3d 949, 960 (Mass. 2017). And "information that an individual communicated with another person, who may have been linked to a

crime, without more, is insufficient to establish probable cause to search either individual's cellular telephone." *Id.* Indeed, the ubiquity of cell phones in modern life was one of the factors that led the Supreme Court in *Riley* to require a warrant to search a phone. 573 U.S. at 395. Relying on the ubiquity of cell phones to justify searches without case-specific probable cause would undermine *Riley*'s warrant requirement and "risk[] Government encroachment of the sort the Framers, 'after consulting the lessons of history,' drafted the Fourth Amendment to prevent." *Carpenter*, 585 U.S. at 320 (quoting *United States v. Di Re*, 332 U.S. 581, 595 (1948)); *see also* Appellee's Brief at 18–21.

Nor can police rely solely on the possession of a phone during the arrest of a particular type of crime. *See United States v. Ramirez*, 180 F. Supp. 3d 491, 495 (W.D. Ky. 2016) ("Possessing a cell phone during one's arrest for a drug-related conspiracy is insufficient by itself to establish a nexus between the cell phone and any alleged drug activity."). "[T]he existence of some relevant facts does not make every inference connecting evidence to the place to be searched reasonable." *United States v. Griffin*, No. 22-4257, 2026 WL 2357208, at *5 (4th Cir. Aug. 14, 2026).

"At some point an inference becomes, in Fourth Amendment terms, an improbable leap." *United States v. Lyles*, 910 F.3d 787, 795 (4th Cir. 2018) ("There is insufficient reason to believe that any cell phone in the home, no matter who owns

it, will reveal evidence pertinent to marijuana possession simply because three marijuana stems were found in a nearby trash bag”).

In the context of warrants to search cell phones, permitting “improbable leap[s],” *id.*, would usher in a future where “all parties suspected of participating in an offense would be subject to having their cell phones searched, not because they used their phones to commit the crime, but merely because they owned cell phones,” *Baldwin*, 664 S.W.3d at 134. Such a future is particularly troubling given the backdrop of modern overcriminalization. As Justice Gorsuch has noted, the average American unwittingly commits multiple crimes every day.[8] The commission of even minor violations should not be grounds for invasive cell phone searches that allow law enforcement to discover intimate information about one’s life.

As the *Riley* Court recognized, “[i]t would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone.” 573 U.S. at 399. But that does not make the search of a cell phone reasonable in every case. *See id.* Courts must ensure that any search of a cell phone is supported by a case-specific nexus between the phone and the alleged crime under investigation.

---

[8] *Neil Gorsuch*, PBS (Aug. 16, 2024), at 11:55, https://tinyurl.com/4js7mtd3.

## CONCLUSION

In order to preserve Fourth Amendment protection against unreasonable searches, courts must rigorously apply the nexus requirement when evaluating warrants to search cell phones. Law enforcement must not be permitted to intrude on such private spaces until they have case-specific facts establishing probable cause to believe that particular evidence of the crime under investigation will be found there.

Dated: September 3, 2026

Respectfully submitted,

/s/ Laura Moraff

Laura Moraff
Nathan Freed Wessler
Brett Max Kaufman
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
lauramoraff@aclu.org

Michael W. Price
*Litigation Director, Fourth Amendment Center*
Lisa Mathewson
*Vice Chair*, *Amicus Committee*
NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS
1660 L. St. NW, 12th Fl.
Washington, DC 20036
mprice@nacdl.org
lisa.mathewson@mathewson-law.com

Andrew Crocker
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
andrew@eff.org

Witold J. Walczak
PA Bar No. 62976
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
(412) 681-7864
vwalczak@aclupa.org

*Counsel for Amici Curiae*

## COMBINED CERTIFICATIONS

In accordance with applicable Federal and Local Rules, I certify as follows:

1. I am a member in good standing of the Bar of this Court.
2. This brief complies with the type-volume limits because, excluding those parts of the brief exempted under Federal Rule of Appellate Procedure 32(f), it contains 3,169 words.
3. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word 365.
4. The text of this electronic brief is identical to the text of the paper copies of the brief.
5. This electronic brief was scanned for viruses and no virus was detected.

Dated: September 3, 2026 *<u>/s/ Laura Moraff</u>*

## CERTIFICATE OF SERVICE

I hereby certify that on this third day of September, 2026, the foregoing brief of Amici Curiae American Civil Liberties Union, American Civil Liberties Union of Pennsylvania, National Association of Criminal Defense Lawyers, and Electronic Frontier Foundation was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Dated: September 3, 2026 *<u>/s/ Laura Moraff</u>*