NO. 26-2028

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellant

v.

GRISELLE LaCOSTA-FRANCO,
Appellee

APPEAL FROM ORDER SUPPRESSING EVIDENCE
IN CRIMINAL NO. 26-027 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# REPLY BRIEF FOR APPELLANT UNITED STATES OF AMERICA

DAVID METCALF
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

ASHLEY N. MARTIN
NICHOLAS A. DiMARCO
Assistant United States Attorneys

615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8568

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................ 1

THE AFFIDAVIT PRESENTED PROBABLE CAUSE TO SEARCH THE DEFENDANT'S CELL PHONES ............................. 1

A. The Affidavit Presented Substantial Facts Supporting the Conclusion that Evidence of Criminal Activity Would Probably Be Located on the Phones; the Possibility of an Innocent Explanation is Irrelevant ................... 1

B. The Good Faith Exception Applies............................................ 13

C. Conclusion ........................................................................ 17

## TABLE OF AUTHORITIES

### Cases

*Acosta v. Ames Dep't Stores, Inc.*,
386 F.3d 5 (1st Cir. 2004) ........ 6

*Chatrie v. United States*,
146 S. Ct. 2193 (2026) ........ 2

*Com. v. Broom*,
52 N.E.3d 81 (Mass. 2016) ........ 12

*Cox v. Hainey*,
391 F.3d 25 (1st Cir. 2004) ........ 6

*D.C. v. Wesby*,
583 U.S. 48 (2018) ........ 5, 6

*Illinois v. Gates*,
462 U.S. 213 (1983) ........ 5

*Kaley v. United States*,
571 U.S. 320 (2014) ........ 5

*Messerschmidt v. Millender*,
565 U.S. 535 (2012) ........ 16

*Ornelas v. United States*,
517 U.S. 690 (1996) ........ 6

*United States v. Arvizu*,
534 U.S. 266 (2002) ........ 6

*United States v. Blasdel*,
153 F.4th 1069 (10th Cir. 2025) ........ 13

*United States v. Brown*,
828 F.3d 375 (6th Cir. 2016) ........ 13

*United States v. Griffith*,
867 F.3d 1265 (D.C. Cir. 2017)....................................................................12

*United States v. Morton*,
46 F.4th 331 (5th Cir. 2022) .......................................................................14

*United States v. Ramirez*,
180 F. Supp. 3d 491 (W.D. Ky. 2016) ..........................................................13

*United States v. Underwood*,
725 F.3d 1076 (9th Cir. 2013) .....................................................................14

*United States v. Whitner*,
219 F.3d 289 (3d Cir. 2000) ................................................................... 8, 10

*United States v. Winchenbach*,
197 F.3d 548 (1st Cir.1999) ......................................................................... 6

# ARGUMENT

## THE AFFIDAVIT PRESENTED PROBABLE CAUSE TO SEARCH THE DEFENDANT'S CELL PHONES

### A. The Affidavit Presented Substantial Facts Supporting the Conclusion that Evidence of Criminal Activity Would Probably Be Located on the Phones; the Possibility of an Innocent Explanation is Irrelevant.

The briefs of appellee Griselle LaCosta-Franco and her amici fail to defeat the government's persuasive position as appellant that the district court erred in granting her motion to suppress evidence obtained from two cell phones.

To their credit, counsel for LaCosta-Franco make no effort to defend the unsupportable rationales presented by the district court. They do not, for instance, engage in the same "semantic exercise" to show that law-abiding citizens, like drug traffickers, use cell phones to coordinate and communicate, such that a search of a trafficker's phone for evidence of illegal activity is unwarranted. Nor do they support the notion that a different Fourth Amendment approach applies to cell phones because "[t]he ubiquity and technology of smartphones occupy a unique space in the present-day," App. 26 (court opinion), such that a more direct

connection between use of a cell phone and criminal activity is required to permit a search, App. 28-29 (same).[1]

The appellee does stray in suggesting that the "government seeks a per se rule 'authorizing law enforcement to search the phones of drug dealers.'" Br. 4 (quoting Gov't Br. 3); *see also* Br. 17. Indeed, the defense embarks on a discussion spanning nine pages of its brief to state the proposition that no per se rule exists. Br. 17-26. This is a complete red herring. Of course there is no per se rule, and every case must be assessed on its facts. The government said as much in its brief. Gov't Br. 43 ("The

[1] The brief of amicus Project for Privacy and Surveillance Accountability, Inc. ("Project for Privacy") attempts to go further. It presents the argument that because smartphone ownership is universal and ubiquitous, mere possession of a smartphone "does virtually nothing to distinguish criminal from non-criminal activity or mark the phone as a place likely to contain evidence of criminal activity." Project for Privacy Amicus Br. 3-4. That claim proves far too much. As explained in the government's principal brief, for the very reason that smartphones are now employed by users in every facet of personal and professional life, it is virtually certain that they are used in an organized criminal endeavor just as in a legal activity. A magistrate judge can certainly consider that fact along with all other case-specific facts in assessing the probability that a phone seized from a suspect will contain evidence of the criminal conduct under investigation. *See* Gov't Br. 43-44.

The Supreme Court's recent decision in *Chatrie v. United States*, 146 S. Ct. 2193 (2026), issued after the government filed its brief as appellant in this matter, is consistent with that position. *Chatrie* again recognizes that individuals have a reasonable expectation of privacy in data on a cell phone, such that a warrant issued by a neutral and detached magistrate is required, *id.* at 2215, exactly as law enforcement proceeded here.

government is not asserting that probable cause exists to search an offender's cell phone in relation to any crime. Even in drug prosecutions, there will likely be cases in which the link is insufficient.").

At bottom, rather than rest on the district court's suggestions of an alteration in Fourth Amendment doctrine, or mistakenly establish that the government is promoting a per se rule, the defense settles on a single argument: that the facts in this case did not establish a nexus between the cell phones in LaCosta-Franco's possession and her criminal activity. The appellee can present this argument only by (like the district court) never addressing the full set of facts presented in the agent's affidavit, and by incorrectly insisting that her posit of an innocent explanation must be accepted.

LaCosta-Franco presents her position as follows:

> A search warrant requires probable cause to believe that evidence of the crime will be found in a particular place, that is, a nexus. A nexus cannot be established by per se rules, but turns on the facts of the case. In Ms. LaCosta-Franco's case, the search warrant affidavit lacks a nexus. It contains no evidence that Ms. LaCosta-Franco used a cell phone for criminal activity. Nor can this be inferred. The affidavit does not allege that Ms. LaCosta-Franco was buying and selling drugs. It alleges that she was "transporting" them, Gov't Br. at 29, which does not require the use of a cell phone. Such instructions can be given in person.

Br. 13.

The requirement of a nexus is indisputable. The government does not contest the conclusion of the ACLU and other organizations: "In order to preserve Fourth Amendment protection against unreasonable searches, courts must rigorously apply the nexus requirement when evaluating warrants to search cell phones. Law enforcement must not be permitted to intrude on such private spaces until they have case-specific facts establishing probable cause to believe that particular evidence of the crime under investigation will be found there."[2] In this case, the specific facts presented in the affidavit, along with reasonable inferences that may be drawn from those facts, and the affiant's informative experience, provided an ample probability nexus between the defendant's cell phones and criminal activity.

In arguing otherwise, in essence, LaCosta-Franco is saying that there is a possible innocent explanation – that someone handed her the keys to a stolen truck along with a huge bounty of contraband – without communicating with her by phone, and without any expectation that she would use a phone to arrange her disposition of the goods. Maybe that is possible, on the theory that anything is possible, even this unlikely

---

[2] Amicus brief of American Civil Liberties Union, Electronic Frontier Foundation, and National Association Of Criminal Defense Lawyers at 19.

scenario.[3] But that does not defeat the magistrate judge's finding of probable cause on the facts presented.

As the Supreme Court recounted in *D.C. v. Wesby*, 583 U.S. 48 (2018), probable cause does not present "a high bar." *Id.* at 57 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). Rather, the standard "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 583 U.S. at 57 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)).

Thus, *Wesby* held that an officer assessing probable cause, like a judge, need not refrain from acting based on possible innocent inferences that may be drawn from the circumstances. The Court stated:

> [P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts. As we have explained, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Gates*, 462 U.S., at 244, n. 13. Thus, the panel majority should have asked whether a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a "substantial chance of criminal activity." *Ibid.*

---

[3] The government acknowledged as much in its brief, stating: "Maybe it is possible in some strange scenario that LaCosta-Franco was just handed the keys to the truck by a passerby, donned the gloves and the cross-body bag containing contraband, and had no electronic communications with anyone in advance. But of course, the reasonable inference is that she was a significant trafficker who had to coordinate with others to amass this vast stash of drugs and the accoutrements of drug trafficking, and used a cell phone to do so." Gov't Br. 34-35.

*Wesby*, 583 U.S. at 61. *See also United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct."). The First Circuit stated the matter clearly:

> To be sure, alternative inferences could have been derived from the evidence available to [the officer]. But the availability of alternative inferences does not prevent a finding of probable cause so long as the inference upon which the officer relies is reasonable. As we have said, "[t]he probable cause standard does not require the officers' conclusion to be ironclad, or even highly probable. . . . [It] need only be reasonable." *United States v. Winchenbach*, 197 F.3d 548, 555-56 (1st Cir.1999). Consequently, when conflicting inferences are available to resolve the issue of probable cause and both of them are plausible, "it does not matter which inference is correct."

*Cox v. Hainey*, 391 F.3d 25, 32-33 (1st Cir. 2004) (quoting *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 9 (1st Cir. 2004)).

Of course, a police officer is entitled to "draw inferences based on his own experience in deciding whether probable cause exists," and a reviewing court must give due weight to such inferences. *Ornelas v. United States*, 517 U.S. 690, 699-700 (1996).

In this case, as explained at great length in the government's opening brief, there was extensive evidence supporting the agent's and the magistrate judge's finding of probable cause, supported by numerous appellate decisions. LaCosta-Franco argues otherwise only by (like the

district court) not addressing a vast amount of the available evidence or many of those decisions.

LaCosta-Franco was in possession of a stolen vehicle. She was wearing latex gloves. She was wearing a crossbody bag containing, in part, about 50 baggies of fentanyl, a vial containing heroin, and a container of crack cocaine. She had been sitting on top of two bags containing a total of approximately one and a half kilograms of heroin. There was a backpack in the rear seat containing additional gloves consistent with those she wore, packets consistent with the packaging of the drugs found on her person, significant quantities of cocaine, fentanyl, and other controlled substances, three digital scales, a pill bottle that listed another individual as a patient, and a Pennsylvania driver's license belonging to another individual. App. 55-56. The failure of the defense to address these facts, and their import, speaks volumes.[4]

On top of all that, the affiant, Agent Scanlan, explained his extensive training and experience during four years as a DEA agent, establishing his knowledge that, in part, "narcotics traffickers frequently use cellular telephones, and other communication devices to further their illegal

[4] Indeed, the appellee devotes more attention to several hypothetical factual scenarios than the facts in Agent Scanlan's affidavit. Br. 24-26.

activities by remaining in constant or ready communication with one another without restricting either party to a particular telephone or location," and "often use multiple cellular telephones to conduct illegal narcotics activity. . . ." App. 51-52. *See also* App. 56-57 (explaining traffickers' use of features of cell phones to list contacts and addresses, hold photographs and audio and video files, send and receive e-mails and texts, engage on social media, navigate through maps and GPS, and use the Internet for web browsing, all to further illegal conduct in the manners explained).

This Court has already provided precedential guidance concerning searches of the homes of suspected drug dealers. Those cases apply with equal force here. Govt. Br. 37-40 (discussing *United States v. Whitner*, 219 F.3d 289 (3d Cir. 2000), and its progeny). As the government established in its opening brief, under that line of cases, Agent Scanlan's expertise, combined with the facts of this case, sufficed to link the cell phones to LaCosta-Franco's drug activities. LaCosta-Franco's treatment of this case law is entirely unpersuasive. Br. 21-23. By mischaracterizing the government's position as seeking a per se rule – by selectively quoting a sentence in the introduction to our opening brief – LaCosta-Franco avoids

applying these cases to the facts of this case, which are then presented in the most innocent light possible.

Is it possible, as LaCosta-Franco speculates, that she was just a family member of a drug trafficker, who was asked in person to put on the gloves and the crossbody bag and drive the stolen truck? Or was it possible that she was a careful and very sophisticated trafficker who communicated with confederates only in person? Br. 24-25. We suppose so. But it is at least equally (if not far more) reasonable to assume that a person who possessed such a massive and valuable trove of different controlled substances had coordinated with others by phone to amass it, and to plan to transfer it later. That reasonable assumption in the modern world was only buttressed by the fact that LaCosta-Franco was in possession of two cell phones at the very same time she was arrested in possession of the contraband, and endeavored to conceal the phones when apprehended.[5] And it was

---

[5] The affidavit states: "LACOSTA-FRANCO repeatedly slipped her handcuffs—meaning she repeatedly moved them down her wrists and off of her hands—and attempted to conceal items in her pockets, including SUBJECT DEVICE-1 and SUBJECT DEVICE-2." App. 54. The appellee argues that she was not trying to conceal the phones, just put them in her pocket, and that the magistrate judge could not rely on the arresting officers' perception. Br. 28. She adds that "[t]here is nothing unlawful or even unusual about having two cell phones." Br. 30. Here again, she is just presenting all inferences to favor a finding of innocence, which is impermissible at this stage. As the government has explained, courts have

*continued . . .*

consistent with the extensive experience of the affiant, on which the magistrate judge is entitled to rely. In this respect, it matters not whether LaCosta-Franco had purchased the drugs, they had been consigned to her, or she was "transporting" the drugs, as appellee suggests.[6] The critical point is that it was reasonable for the magistrate to infer that LaCosta-Franco's role in the narcotics trafficking operation almost certainly required communication, and that evidence of such communication would be found on the two cell phones in her immediate possession.[7]

---

long approved the inference that a cell phone, particularly when multiple cell phones are possessed, is a tool of drug trafficking. And a reviewing judge of course can rely on an officer's perception of the nature of the defendant's conduct, particularly when she was seen repeatedly trying to slip her handcuffs in order to conceal the phones.

[6] On this point, it is notable that the word "transporting" does not appear in the affidavit, which instead refers to LaCosta-Franco's conduct as "narcotics trafficking." App. 63.

[7] The *Whitner* line of cases, as previously explained, does not require direct proof of the use of a home in drug trafficking activity. Rather, it permits reliance on an inference that a drug trafficker will keep contraband or other evidence in his or her home. This Court has routinely approved warrants based on such an inference, notwithstanding the long-recognized significance of the home as the principal area protected by the Fourth Amendment. No doubt a similar inference is warranted with regard to a cell phone, which likely contains extensive information regarding a person's activities and interests, and thus, in the hands of a drug trafficker engaged in activity requiring coordination, logically contains evidence of that conduct.

For its part, the brief of the ACLU amici also does not address the facts of this case at all. Only the amicus brief of Project for Privacy makes a minimal effort. After absurdly stating, "The government's affidavit supplies no case-specific facts," Br. 12, Project for Privacy addresses two. It discusses LaCosta-Franco's effort to hide her cell phones, presenting the same mistaken rejection of the officers' perception addressed in footnote 5 above. Br. 17-19. It then addresses only the 1.5 kilograms of heroin recovered (not the vast amount of other material found on LaCosta-Franco's person and in a backpack), and states:

> Roughly 1.5 kilograms of heroin is no personal-use amount, and it fairly supports an inference that LaCosta-Franco had suppliers and customers—that the offense involved dealing with other people. But the inference the warrant requires lies two steps beyond. That the offense involved others does not establish that she coordinated with them by phone rather than in person or through intermediaries; and even if she used a phone, it does not establish that a record of those dealings resides on either of the two seized devices rather than a discarded phone, a counterpart's phone, or no phone at all. Quantity makes trafficking more likely; it does not make either of the two phones seized a likely place to find its record.

Project for Privacy Amicus Br. 18. Like LaCosta-Franco, amicus simply demands that the court accept the possibility that, even though "the offense involved dealing with other people," the defendant did not use the phones she carried to accomplish that, and instead used some other phone or somehow managed to use no phone at all. As repeatedly explained, a

reviewing magistrate is not required to accept that innocent inference, and instead may rely on the obvious contrary inference, buttressed by the agent's experience, that the phones LaCosta-Franco used were the very ones she was carrying in the stolen truck along with all of the contraband. And moreover, contrary to amicus' suggestion, the evidence does not have to "establish" anything; it just has to provide a reasonable basis for finding a probability that evidence is located in the place to be searched.

Viewing all of the evidence, and affording substantial deference to the magistrate judge's conclusion as required, it is apparent that the presentation crossed the low threshold of probable cause to permit a search of the phones for evidence related to drug trafficking. The possibility of an innocent explanation for the presence of the cell phones is irrelevant. The government cited many appellate decisions reaching similar conclusions, Gov't Br. 48-53, that the appellee does not address.[8]

[8] The amicus briefs cite only inapposite cases involving nothing remotely comparable to the considerable facts presented here. *See United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017) (police obtained a warrant to search an apartment for cell phones one year after the suspect's alleged participation as the getaway driver in a homicide; "[t]he supporting affidavit, however, offered almost no reason to suspect that Griffith in fact owned a cell phone, or that any phone or other device containing incriminating information would be found in his apartment," *id.* at 1268); *Com. v. Broom*, 52 N.E.3d 81, 90 (Mass. 2016) (boilerplate statements that a great deal of data is located on cell phones did not save a warrant related

*continued . . .*

### B. The Good Faith Exception Applies.

In the alternative, application of the good faith rule cannot reasonably be disputed. This did not resemble in any sense a "bare bones" affidavit, and the agent was permitted as a matter of law to rely on the neutral judge's assessment. LaCosta-Franco's position that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" is unsustainable. In support, she cites only cases presenting clearly different and insufficient facts. Br. 32, citing *United States v. Blasdel*, 153 F.4th 1069, 1076 (10th Cir. 2025) (an affidavit to search a storage unit relied on an impermissible intrusion by an officer before a warrant was obtained, and otherwise presented entirely vague statements by employees of the storage facility); *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016) (the defendant was a passenger in a vehicle during a delivery of heroin, that was picked up at a different home; there was no evidence linking the activity to the defendant's residence, and in fact, officers waited 22 days to even seek a warrant to search that residence);

---

to a murder where other electronic evidence available to the police suggested no use of a cell phone in relation to the incident); *United States v. Ramirez*, 180 F. Supp. 3d 491, 495 (W.D. Ky. 2016) (the affidavit simply related that the cell phone was seized when the defendant was arrested for conspiracy to possess marijuana with intent to distribute; no facts at all were stated about any criminal activity to which the cell phone may be linked).

*United States v. Underwood*, 725 F.3d 1076, 1086 (9th Cir. 2013) (there was no evidence linking the suspect to drug trafficking; the only evidence presented in an affidavit for a warrant to search his house was that three months earlier he delivered two crates with unknown contents to two traffickers in a Home Depot parking lot).

*United States v. Morton*, 46 F.4th 331 (5th Cir. 2022) (en banc), cited by amicus Project for Privacy in its brief discussion of the good faith rule, strongly supports our position.[9] In that case, officers obtained a warrant to search three cell phones that were found on the defendant's person at the time of his arrest. He was apprehended in his car, where officers found a modest amount of marijuana, pipes, and 16 ecstasy pills. The government advanced the proposition that evidence of drug trafficking is likely to be found on a cell phone, but the en banc Court determined not to address the probable cause issue. It stated: "It is a close call whether the evidence recounted in the affidavits established probable cause for drug trafficking as opposed to drug possession. And if the evidence indicated only possession, then it is another close call whether there was probable cause to believe that evidence of drug possession would be found on the phones. But as we have emphasized, on close calls second guessing the issuing judge is

[9] The ACLU amici do not address good faith.

not a basis for excluding evidence." *Id.* at 338. The court applied the good faith rule, explaining at length that the warrant was not bare bones, and the officers were permitted to rely on the judge's authorization. That conclusion certainly applies here, where the evidence was in fact overwhelming that LaCosta-Franco was trafficking narcotics and not simply possessing small quantities for personal use.

A finding of good faith is further warranted given the agent's consultation with a prosecutor before proceeding. The appellee acknowledges that is a consideration, but claims there is no record of such an occurrence. Br. 34. That is incorrect. At the suppression hearing, the court inquired: "At the top right-hand corner of the first page, it says AUSA Ashley N. Martin, who is lead counsel in this matter. Should the Court take that as an indication that the U.S. Attorney's Office was consulting or consulted with the preparation of this warrant?" The prosecutor responded, "Yes, Your Honor." App. 92. The defense did not dispute this, and in its opinion, the court observed, "The Government represented during the hearing in this matter that it works in consultation with law enforcement to produce these warrants." App. 35 n.20.

The government does not suggest, as the appellee asserts, that "an interested prosecutor could validate a search warrant . . . ." Br. 35 n.7. The

issue goes to good faith, and the bar on application of the exclusionary rule. *Messerschmidt v. Millender*, 565 U.S. 535, 553-54 (2012) ("On top of all this, the fact that the officers sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause.").

In this case, the affidavit presented ample probable cause for the search of the cell phones, and in the alternative, at minimum, the agent relied in good faith on the judge's endorsement.

### C. Conclusion.

For these reasons, as well as those stated at greater length in the government's principal brief, the ruling of the district court suppressing evidence should be reversed.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals
Pa. Bar No. 58126

*/s Ashley N. Martin*
ASHLEY N. MARTIN
Pa. Bar No. 314636

*/s Nicholas A. DiMarco*
NICHOLAS A. DiMARCO
Pa. Bar No. 332632
Assistant United States Attorneys

United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8568

## CERTIFICATION

1. The undersigned certifies that this brief contains 3,924 words, exclusive of the table of contents, table of authorities, signature block, and certifications, and therefore complies with the limitation on length of a reply brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).

2. I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by OfficeScan Real-Time Scan Monitor, version 10.5, by Trend Micro, and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served on the Filing Users identified below through the Electronic Case Filing (ECF) system:

Abigail E. Horn, Esq.
Assistant Federal Defender, Chief of Appeals
Federal Community Defender Office
601 Walnut Street, Suite 540 West
Philadelphia, PA 19106

*Counsel for Appellee Griselle LaCosta-Franco*

Laura Moraff, Esq.
Nathan Freed Wessler, Esq.
Brett Max Kaufman, Esq.
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

*Counsel for Amicus Curiae American Civil Liberties Union*

Witold J. Walczak, Esq.
ACLU of Pennsylvania
P.O. Box 23058
Pittsburgh, PA 15222

*Counsel for Amicus Curiae ACLU of Pennsylvania*

Andrew Crocker, Esq.
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109

*Counsel for Amicus Curiae Electronic Frontier Foundation*

Gene C. Schaerr, Esq.
Erik S. Jaffe, Esq.
Justin A. Miller, Esq.
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006

*Counsel for Amicus Curiae Project for Privacy and Surveillance Accountability, Inc.*

Michael W. Price, Esq.
Lisa Mathewson, Esq.
National Association of Criminal Defense Lawyers
1660 L Street NW, 12th Floor
Washington, DC 20036

*Counsel for Amicus Curiae National Association Of Criminal Defense Lawyers*

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney

DATED: October 8, 2026.